EASTERN SASH AND DOOR COMPANY, APPELLANT, v. RANIERI SEBASTIANI, DEFENDANT, AND CHARLES GIAMPARTONE ET UX., ET AL., RESPONDENTS.

Submitted May 29, 1931—Decided October 19, 1931.

For the appellant, *Maurice S. Maurer* (*Philip J. Schotland,* on the brief).

For the respondents, *Stein, McGlynn & Hannoch* (*Aaron Lasser,* on the brief).

The opinion of the court was delivered by

CASE, J. The appellant is the plaintiff. It, a material-man, brought the action in 1928, under the first section of the Mechanics' Lien law. 3 *Comp. Stat., p.* 3291. The complaint alleged that the owners had made an agreement with one Sebastiani, as building contractor, for the construction of a building on their property; that the agreement had not been filed; that Sebastiani had purchased lumber from plaintiff for the construction of the building and that plaintiff claimed judgment, general against Sebastiani and specially to be made against the lands and buildings prior to any rights of the owners or the mortgagee therein. Sebastiani, the owners and the mortgagee were brought in as parties defendant. Judgment by default was entered against

Sebastiani. The remaining defendants answered and are now before this court as respondents. The salient defense presented by the pleadings is that the building was constructed under a contract in writing and that the contract, together with the specifications, was duly and seasonably filed in the Essex county clerk's office; and section 2 of the Mechanics' Lien law is invoked to give to the building and land immunity from liability to all save the contractor.

There was a reference, by consent, to a referee "to take and report an account between the plaintiff and the defendants herein and to report whether the plaintiff is entitled to judgment specially against the building and lands set forth in the complaint, and the question of priority of the liens of the plaintiff and the defendants, reserving to the parties hereto their respective rights of trial by jury." The referee filed a lengthy report, in the course of which he announced his conclusion that the contract, which was made with one Marinaccio, was fictitious and fraudulent and at the close of which he recommended a judgment as sought by the plaintiff. The respondents then filed exceptions to the report and demanded a jury trial. Pursuant to notice that at the trial they would move for an order prohibiting the use of the referee's report as *prima facie* evidence (Practice act of 1903, section 155; 3 *Comp. Stat., p.* 4101), respondents obtained such an order upon the grounds that "said report is improper and contains matters beyond the scope of the reference and is contrary to law." Trial was had before a jury and at its close there was a directed verdict in favor of the defendants and against the plaintiff.

Plaintiff specified three grounds of appeal: (1) The directed verdict; (2) the refusal to admit the report of the referee in evidence; (3) the order suppressing the referee's report.

The second and third grounds are in effect one and are so treated on appellant's brief as point 1.

We shall first consider the error said to attend the directed verdict. It is to be recalled that the appeal does not involve the liability of the one who purchased the goods to make

payment for the same. Plaintiff sold to Sebastiani and has its judgment against him. To go beyond this, and reach the lands of another, plaintiff must bring itself within the provisions of the Mechanics' Lien law. Section 1 of that law gives the lien; but section 2 (3 *Comp. Stat., p.* 3293) provides:

"Whenever any building shall be erected in whole or in part by contract in writing, such building and the land whereon it stands shall be liable to the contractor alone for work done or materials furnished."

The owners did enter into a contract in writing with another than Sebastiani, namely, Rocco Marinaccio, for the entire construction. The agreement was made under date of June 5th, 1928, and was filed, with the specifications accompanying the same, in the office of the clerk of the county of Essex on the following day. At a later date building operations were begun, and the lumber for which plaintiff sues was sold and delivered. The contract gives precise information as to the names of the owners and the architect, the street number where the structure was to be erected, the character of the construction, and as to such other matters as are usually the subject-matter of such a document. The instrument, in form, contents and filing, seems to be without fault.

There is evidence, however, that Marinaccio was not the real contractor, that Sebastiani was actually the one who undertook the work, but that the latter, being in financial difficulties, made the contract through Marinaccio, one of his workmen. There is further evidence that the owners, in making the agreement, knew of this situation; and this, though controverted by the owners, must, for present purposes, be assumed to be true. Upon that general factual basis the plaintiff alleges fraud in the contract and would have it treated as a nullity. But we find that no evidence of a fraudulent purpose or of a fraudulent act on the part of the owners and no evidence of knowledge by them of any fraudulent purpose or fraudulent act on the part of either Marinaccio or Sebastiani. Sebastiani testifies that he told

the owners that "because I [Sebastiani] had some trouble in the house, in 80 Poe avenue, and I can't sign the contract, let him sign, Mr. Marinaccio. He says yes and Marinaccio sign for me. * * * I say I build it. * * * Marinaccio sign the contract, but I am responsible for the building of the house." That is the substance of what plaintiff relies upon to prove fraud at the inception of the instrument, and we consider that it is insufficient to fasten that vice upon the owners. Giving the evidence its most favorable aspect to the plaintiff, the contract was in truth the contract of Sebastiani; but this does not spell fraud nor does it rob the contract of its place as a filed contract under which the building was actually erected. If there was fraud by the owners, against whom was it committed? Certainly not, we think, against the plaintiff. If plaintiff was to pursue the remedy it now seeks, its opportunity for inquiry became its duty. An inspection of the public records would have disclosed the contract showing the full names of the owners, a precise identification of the property, and the name and address of the architect.

In *Earle* v. *Willets & Co.*, 56 *N. J. L.* 334, the controversy was whether a materialman could enforce a lien against the property when the contract had been signed by the husband of the owner and not by the owner. Mr. Justice Reed, in the course of the opinion written for this court, said:

"Now, in respect of the means by which the existence of a contract can be discovered, it may be again observed that, whether a filed contract is signed by the owner or not, inquiry into matters aside from the record is essential to a successful inquiry in respect to its existence. * * * I cannot conceive an instance where diligent inquiry will not disclose whether the person to whom service is rendered is the owner, contractor, subcontractor, or an agent of either of these. Inquiry of the owner would also disclose the fact whether the work was being done by him or not, and if by him, whether by contract or not, and if by contract, who is the contractor. Unless such inquiries as can be made are answered by such a series of falsehoods as would brand the whole transaction

as fraudulent and void, I see no difficulty in ascertaining the existence of a contract, whether it is signed in the name of the owner or in the name of a third person."

Inquiry at a responsible source would have divulged the existence and the recording of the contract and would have disclosed any information to which plaintiff was entitled or else would have unfolded such a series of falsehoods as, to repeat the language of *Earle* v. *Willets & Co., supra,* "would brand the whole transaction as fraudulent and void." So far as the testimony discloses, there was no inquiry whatever made by the plaintiff and no representation made to the plaintiff, except the one by Sebastiani and not chargeable to the owners—"I [Sebastiani] say 'I am the contractor.'" It does not appear that plaintiff made effort to ascertain whether there was or was not a filed contract, made by Sebastiani or otherwise, or that, in extending the credit, it relied upon other than Sebastiani's financial responsibility. The elements essential to fraud have not been proved. *Byard* v. *Holmes,* 34 *N. J. L.* 296; *Kosobucki* v. *McGarry,* 104 *Id.* 65.

It is further contended that the building agreement was fictitious and should be disregarded under the theory followed in *Young* v. *Wilson,* 44 *N. J. L.* 157, and *Improved Building and Loan Assn.* v. *Larkin,* 88 *N. J. Eq.* 52. In each of those cases the two parties to the contract were in effect the same person in the legally untenable position of making a bargain with himself. In the first, Wilson was so placed, and in the second, the partnership known as "The Latin American Construction Company."

Here there is a real contract, so determined in a suit for damages brought for the breach thereof by the owners against Marinaccio in the Essex County Circuit Court wherein judgment was entered against the latter after he had filed an answer, later stricken by the court as frivolous, denying the contract as his. That judgment does not constitute *res adjudicata* in the present case, but it emphasizes the reality of the contract. That Sebastiani chose, or even undertook,

with the knowledge and consent of the owners, to be also bound does not make the contract a fiction. I adopt the language used by Judge Dungan in directing the verdict at Circuit:

"That the contract was not fictitious is manifest; no question but that the contract was a real contract. It correctly expressed, with the specifications, the building which was to be constructed under it. It correctly stated the contract price, the time and amount of payments, and there is no suggestion in this case that there was any intention on the part of anybody that this building was to be constructed other than in strict conformity with the terms of the contract."

We find no error in the direction of verdict for the defendants. This being so, the suppression of the referee's report, even though that had been error, would not have saved plaintiff from a directed verdict; for there was not that in the report which would have entitled plaintiff to go to the jury. There is nothing in the finding of the referee, and particularly nothing in the recital of evidence taken before him and upon which he specifically rests his conclusions, that would have served to carry the case to the jury. Therefore, even if—and we do not so hold—the suppression of the report be error, the error was not harmful and consequently is not a cause for reversal. The report did, indeed, vary far from that terse and succinct form which has come down to us in *Craig* v. *Craig,* 9 *N. J. L.* 198, and also from the suggestion of Mr. Justice Reed in *American Saw Co.* v. *First National Bank,* 18 *N. J. L. J.* 53: "Nor was the referee to set out the evidence, but only his conclusions from the evidence."

The judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, DALY, DONGES, DEAR, WELLS, JJ. 9.

*For reversal*—PARKER, CAMPBELL, VAN BUSKIRK, KAYS, HETFIELD, JJ. 5.